IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VANESTA RUIZ,<br>o/b/o Z.R. | ) <br> ) <br> ) | CASE NO. 1:09-CV-1859 |
| Plaintiff, | ) <br> ) | JUDGE WELLS |
| v. | ) <br> ) | |
| MICHAEL ASTRUE,<br>Commissioner<br>of Social Security, | ) <br> ) <br> ) <br> ) | MAGISTRATE JUDGE McHARGH |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Vanessa Ruiz's application for Social Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, on behalf of her son, Z.R., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings not inconsistent with this decision.

## I. INTRODUCTION and PROCEDURAL HISTORY

Plaintiff, on behalf of her child, Z.R., filed her initial application for Supplemental Security Income benefits on January 12, 2006, alleging an onset date of September 1, 2001 (Tr. 74-79). Plaintiff's application for benefits was denied initially and upon reconsideration (Tr. 52-53). Plaintiff alleges that Z.R. suffers from attention deficit hyperactivity disorder ("ADHD"), a mood disorder, and asthma.

Plaintiff timely requested and was granted a hearing before an Administrative Law Judge (Tr. 34-35). Plaintiff then appeared with counsel and testified via video before Administrative Law Judge John D. McNamee-Alemañy (the "ALJ") (Tr. 42-51). On October 2, 2008, the ALJ issued a written decision denying Plaintiff's application (Tr. 7-25). Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 1-4). On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

Born on February 27, 1997, Z.R. was eight years old on the date the application was filed, eleven years old at the time of the hearing, and was at all times a "school-age child" for purposes of the Social Security regulations (Tr. 13). *See* 20 C.F.R. § 416.926a(g)(2).

## II. LEGAL FRAMEWORK FOR CHILDHOOD SSI CASES

An individual under age eighteen will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). Childhood disability claims involve a three-step process in evaluating whether the child claimant is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine whether the claimant is working. If not, the ALJ moves to the second step and determines whether the claimant has a severe mental or physical impairment. Third, the ALJ must consider whether the claimant's impairments meet or equal the listings. An impairment can equal the listings medically or functionally. *Id*. The regulations set out six domains that an ALJ must consider when determining whether the claimant functionally meets the listings:

(1) Acquiring and using information;

(2) Attending and completing tasks;

  (3)  Interacting and relating with others;

  (4)  Moving about and manipulating objects;

  (5)  Caring for yourself; and,

  (6)  Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). In order to establish a functional impairment equal to the listings, the claimant must show an extreme limitation in at least one domain, or a marked impairment in two domains. 20 C.F.R. § 416.921a(d). The regulations define marked and extreme impairments:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities....[it] also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).

> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities....[it] also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

  Additionally, the regulations mandate the ALJ to consider certain evidence in the record. During an evaluation of a disability claim for a child, the regulations require the ALJ to give consideration to information from the child's teachers. 20 C.F.R. § 416.926a(a). The regulations also direct the ALJ to review information from the child's preschool program and school. 20 C.F.R. § 416.926a(2)(ii-iii). When determining the child's functional abilities, the regulations also mandate the examiner to look at how the child performs daily activities in comparison to other children the

same age as the child. 20 C.F.R. § 416.926a(b)(3)(i-ii).

Furthermore, the ALJ must consider medical opinion evidence in the record. 20 C.F.R. § 416.927. The opinions of a treating physician should be given controlling weight when they are well-supported by objective evidence and are not inconsistent with other evidence in the record. 20 C.F.R. § 416.927(d)(2). If the ALJ determines that the opinions of a treating physician should not be given controlling weight, he must articulate good reasons for the weight actually assigned to such opinions. *Id.* In addition, the examiner must consider the opinions of non-examining sources, such as state agency medical consultants, when determining whether the claimant is disabled. 20 C.F.R. § 416.927(f)(2)(i-ii). "Unless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of [state agency medical consultants]". *Id.*

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence and whether, in making that decision, the Commissioner employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact

in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

After applying the three-step evaluation process to Z.R.'s application, the ALJ concluded that he was not disabled. At step one, the ALJ determined that Z.R. had not engaged in substantial gainful activity (Tr. 13). Next, at step two, the ALJ found that the claimant's mood disorder and ADHD were both severe impairments, but that his asthma was not severe under the regulations, as it only had a minimal effect on his functioning (Tr. 13). Lastly, the ALJ concluded that Z.R. did not medically or functionally equal the listings (Tr. 13). Medically, Z.R. did not equal the listings for Mood Disorders (112.04) or ADHD (112.11) (Tr. 13-14). Functionally, Z.R. did not equal the listings because he was only markedly impaired in one domain, interacting and relating with others (Tr. 14, 21-22). The ALJ determined that Z.R. had a less than marked limitation in the domains of acquiring and using information, attending and completing tasks, caring for yourself, and health and physical well-being, and no limitation in the domain of moving about and manipulating objects (Tr. 20-25). On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence.

### I. Whether Substantial Evidence Supports The ALJ's Decision That Z.R. Did Not Functionally Equal The Listings

Plaintiff's principal argument involves the ALJ's rationale under step three of the sequential evaluation process. At step three, the ALJ determined that Z.R.'s impairment did not medically or functionally equal the listings. Plaintiff does not contend that Z.R. medically equaled the listings. Rather, Plaintiff takes issue with the ALJ's finding that the claimant did not functionally equal the listings, because the ALJ concluded that Z.R. was only severely impaired in one domain (Tr. 21-22). Instead, Plaintiff argues that Z.R. was at least markedly impaired in two or more domains, and was therefore disabled. Plaintiff asserts two main arguments to support its claim. First, Plaintiff contends that the ALJ erred by solely relying upon the opinions of two state agency physicians who reviewed the claimant's file prior to its inclusion of significant records showing that Z.R. was disabled. Plaintiff also claims that the ALJ's reliance on state agency physician, Dr. Mormol, was unfounded. Second, Plaintiff argues that the ALJ erroneously disregarded the opinions of Z.R.'s teachers regarding his limitations in violation of [SSR 06-03p](SSR 06-03p), even after the ALJ deemed the evidence credible.

The ALJ's decision began with a lengthy discussion of the record evidence (Tr. 13-19), and his determination of the credibility of such evidence (Tr. 13-19). The record included testimony and evidence from Z.R., Plaintiff, Z.R.'s father, Z.R.'s maternal grandmother, four of Z.R.'s teachers, and several medical sources who either physically examined Z.R. or reviewed his file (Tr. 13-19). Ultimately, the ALJ concluded that all of the record evidence was credible, save evidence from Plaintiff and Z.R.'s father, who the ALJ found to only be partially credible; an evaluation by Z.R.'s treating physician, whose opinions the ALJ afforded little weight; the opinions of one state agency

physician, Dr. Cindy Matyi, to whom the ALJ did not identify how much weight he afforded; and Z.R. himself, to whom the ALJ found to be marginally credible based on his age (Tr. 13-19). Beyond these few exceptions, the ALJ found all of Z.R.'s teachers' evaluations and the remaining medical evidence to be credible. Despite his lengthy discussion of the credibility of the evidence in the record, the ALJ's analysis of the claimant's impairments under each domain was concise and only referenced the findings of two of the three state agency physicians, Drs. Saxena and Mormol, in determining the severity of Z.R.'s problems in each domain.

### A. State Agency Physicians

Three state agency physicians evaluated Z.R.'s file to determine whether he was disabled. The first was Dr. Kamala Saxena. On March 23, 2006, Dr. Saxena, conducted a review of Z.R.'s file and concluded that he was not disabled (Tr. 332-37).[1] Specifically, Dr. Saxena opined that Z.R. had a less than marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for yourself, and health and physical well-being, and no limitation in the domain of moving about and manipulating objects (Tr. 332-37).

Dr. Cindy Matyi was the second state agency physician to review the file. She completed her evaluation on August 12, 2006 (Tr. 341). Dr. Matyi generally agreed with Dr. Saxena's findings with one exception. She opined that Z.R. was markedly restricted in the domain of attending and completing tasks (Tr. 341).

Less than one week later, Dr. John Mormol reviewed the claimant's file on August 17, 2006 (Tr. 342-43). Dr. Mormol's evaluation stated that he "reviewed all the evidence in [the] file and the assessment of the claim [was] affirmed as written." (Tr. 342-43).

---

[1] The evaluation was originally signed off by Ms. Alice Chambly on March 15, 2006 (Tr. 333).

Plaintiff argues that Dr. Mormol's evaluation was ambiguous because it was not clear whether he was affirming Dr. Saxena's findings or the findings of Dr. Matyi. Plaintiff suggests that Dr. Mormol could have been affirming Dr. Matyi's finding that Z.R. was markedly impaired in the domain of attending and completing tasks.

Unfortunately, Defendant's brief misses the point on this issue because Defendant misread the evidence. Defendant contends that it is irrelevant whether Dr. Mormol was affirming Dr. Saxena's findings or Dr. Matyi's findings because Defendant incorrectly alleges that Dr. Matyi opined that Z.R. was markedly impaired in the domain of *interacting and relating to others* (Doc. 20, pg. 16). Consequently, Defendant argues that both Dr. Matyi and the ALJ found Z.R. to be markedly impaired in the same domain, interacting and relating with others (Doc. 20, pg. 16). Defendant's reading of the evidence was deficient. Dr. Matyi opined that Z.R. was markedly impaired in the domain of attending and completing tasks, not in the interacting and relating with others domain (Tr. 341). Thus, Dr. Matyi's findings differed from those of the ALJ. As a result, Plaintiff's argument seeking clarification of Dr. Mormol's assessment has merit.

A review of Dr. Matyi's assessment reveals that remand is warranted. In finding that Z.R. was markedly restricted in the domain of attending and completing tasks, Dr. Matyi[2] explained that she was differing from Dr. Saxena's prior findings based upon information in the file provided by Z.R.'s teacher, who saw the child "nearly every day for several hours" (Tr. 341). Dr. Matyi also emphasized that her report was only affirming the "psychological portion"[3] of the prior evaluation

---

[2]Dr. Matyi is a licensed psychologist in the State of Ohio. STATE MEDICAL BOARD OF OHIO, *Ohio e-license Center*, https://license.ohio.gov/Lookup/SearchDetail.asp?ContactIdnt=2940495&DivisionIdnt=83&Type=L (last visited Nov. 8, 2010).

[3]Based on a reading of Dr. Matyi's evaluation (Tr. 341) and a review of the six domains, it appears that the domains of acquiring and using information, attending and completing tasks,

from March of 2006, with the aforementioned exception changing Z.R.'s limitation in the domain of attending and completing tasks from "less than marked" to "markedly restricted" (Tr. 341). The final notation in Dr. Matyi's report requested that a pediatrician review the "medical portion" of Dr. Saxena's findings to determine whether they were still accurate (Tr. 341). Dr. Matyi further commented that should a pediatrician opine that Z.R. was markedly restricted in domain four (moving about and manipulating objects) or domain six (health and physical well-being), a reconsideration reversal would be warranted (Tr. 341).

Consequently, five days after Dr. Matyi completed her assessment, Dr. John Mormol, a pediatrician,[4] reviewed Z.R.'s file (Tr. 342-43). Dr. Mormol's evaluation simply stated that he affirmed the assessment as written (Tr. 342-43). When analyzed in conjunction with Dr. Matyi's report, it is logical to conclude that Dr. Mormol served as the pediatrician that Dr. Matyi requested to review the physical portion of Dr. Saxena's report. This would also tend to explain why Dr. Mormol's evaluation was conducted in such close proximity to Dr. Matyi's evaluation. Accordingly, the Court concludes that Dr. Mormol's evaluation was not rendering an opinion on the psychological portion of Dr. Saxena's report, which Dr. Matyi, a psychologist, had already reviewed five days prior. But rather, Dr. Mormol's report was an affirmation of Dr. Saxena's prior findings relating to Z.R.'s physical impairments.

---

and interacting and relating with others make up the psychological portion of the evaluation, while the domains of moving about and manipulating objects and health and physical well-being, refer to the physical portion of the evaluation. The domain of caring for yourself appears to include a review of both physical and psychological skills.

[4]Dr. Mormol is a licensed doctor in the State of Ohio. He specializes in pediatrics. STATE MEDICAL BOARD OF OHIO, *Ohio e-license Center*, https://license.ohio.gov/Lookup/SearchDetail.asp?ContactIdnt=3004149&DivisionIdnt=78&Type=L (last visited Nov. 8, 2010).

Because Dr. Mormol affirmed the physical portion of Dr. Saxena's report, the ALJ's reliance on Dr. Mormol's findings in concluding that Z.R. was not markedly impaired in the domains examining Z.R.'s physical impairments such as, moving and manipulating objects and health and physical well-being, are well-founded (Tr. 22-25). However, the ALJ's reliance on Dr. Mormol's findings with regard to the ALJ's analysis of Z.R.'s impairments in the domains examining the child's psychological impairments are misplaced. Here, the ALJ relied upon Dr. Mormol's findings in concluding that Z.R. had a less than marked impairment in the domains of acquiring and using information, attending and completing tasks, and caring for yourself (Tr. 20-24). As a consequence, it is evident that the ALJ relied upon evidence that did not support his conclusions. Remand is proper in cases such as this, where the record does not substantially support the ALJ's decision. *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428 (6th Cir. 1999) (Table). While the ALJ stated that he based his decision on the opinions of Drs. Saxena and Mormol, it does not appear that he did so. After all, not one of the three state agency physicians that reviewed Z.R.'s file opined that he was markedly impaired in the domain of interacting and relating with others. Yet, the ALJ determined that Z.R. had a marked impairment in this domain (Tr. 21-22). For the foregoing reasons, remand is warranted.

Additionally, the ALJ was required to explain the weight he gave to Dr. Matyi's findings and his reasons for doing so. 20 C.F.R. § 416.927(f)(2)(i-ii). As previously explained, "[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of [state agency medical consultants]". *Id.* In this case, the ALJ failed to provide any reason for discrediting the opinions of Dr. Matyi (Tr. 10-25). Although the ALJ noted that Dr. Matyi failed to identify the name of the teacher she referred to in her report, the ALJ

10

did not allege that this failure negated her findings (Tr. 19). On remand, the ALJ should re-evaluate Dr. Matyi's report and expressly determine what weight to give her opinion and state the reasons explaining his decision.

### B. Z.R.'s Teachers' Evaluations

Plaintiff also maintains that the ALJ erred by failing to consider the evaluations from Z.R.'s teachers showing that he was seriously impaired in two or more domains (Doc. 17). Most of the teacher evaluations were added to the record after all of the state agency physicians had already submitted their findings (Tr. 142-55, 205-12, 198-204, 443-52, 188-97). The regulations instruct the ALJ to consider information from the child claimant's teachers when assessing the severity of the child's impairments. SSR 06-03p; 20 C.F.R. § 416.924a(a)(2)(iii). Because teachers have close contact with the child daily, their expertise and insight are "valuable sources of evidence for assessing impairment severity and functioning." SSR 06-03p. The regulations' admonishment for an ALJ to consider the opinions of a child claimant's teachers is not mere lip service. *Id.* In fact, the Social Security Ruling explicitly states that in some circumstances, it may be proper for the ALJ to give more weight to the opinions of a source who is not an "acceptable medical source," such as a teacher, than to the opinions of an "acceptable medical source," including the medical opinions of a treating source. *Id.*

Although the ALJ concluded that Z.R.'s skills in interacting and relating with others were markedly impaired, he failed to cite any specific evidence supporting his decision (Tr. 22). Because none of the state agency physicians opined that Z.R. was markedly impaired in this domain, the Court assumes that the ALJ's decision was based upon Z.R.'s teachers' opinions of his limitation in this area. Regardless of the ALJ's actual impetus behind finding that Z.R. was markedly impaired

11

in the domain of interacting and relating with others, his failure to consider Z.R.'s teachers' evaluations in determining Z.R.'s limitations in the other domains was reversible error.

Despite finding that all of the evidence from Z.R.'s teachers was credible (Tr. 16-18), the ALJ failed to reference any of their evaluations when making his determination of the claimant's impairments under the remaining five domains (Tr. 20-25).  When an ALJ deems evidence to be credible, it is logical that he would contemplate the import of such evidence before rendering a decision.  As the Sixth Circuit recognized, a "claimant [has] no way of establishing his case if his *credible* medical evidence is disregarded." *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963) (emphasis added).

Here, Z.R.'s third, fourth, and fifth grade teachers provided detailed evaluations of his behavior, indicating that his limitation in some domains was equal to or worse than his limitation in interacting and relating with others.  For example, in February of 2006 his second grade teacher, Ms. Gregory, opined that Z.R.'s limitation in attending and completing tasks and caring for himself was worse than his limitation in interacting and relating with others (Tr. 109-14).  She expressed that he had a serious or very serious problem in five domain activities for attending and completing tasks and three domain activities for caring for himself (Tr. 109-12).  On the other hand, she only remarked that he had one very serious problem in interacting and relating with others (Tr. 110).

Additionally, in December of 2006, his fourth grade teacher, who had him in classes for science, Ohio history, reading, and English, observed that his skills in attending and completing tasks and caring for himself equaled or were worse than his skills in interacting and relating with others (Tr. 206-12).  For instance, she opined that Z.R.'s impairment was marked in three domain activities for interacting and relating with others (Tr. 208), however, she also indicated that his

impairment was marked in three domain activities for caring for himself (Tr. 210). She further noted that he was markedly impaired in ten activities and extremely impaired in one activity in attending and completing tasks (Tr. 209). His fourth grade math teacher's evaluation, dated April 16, 2007, portrayed a similar picture (Tr. 199-204). Ms. Skrabec commented that Z.R. had a marked problem in seven activities and an extreme problem in one activity for interacting and relating with others (Tr. 200). But, she also opined that Z.R. was markedly impaired in eleven domain activities in acquiring and using information (Tr. 199). For the domain of attending and completing tasks, Ms. Skrabec commented that Z.R. had a marked problem in five domain activities and an extreme problem in three activities (Tr. 201).

Finally, Z.R.'s fifth grade teacher completed an assessment of his skills on March 15, 2008 (Tr. 188-95). Her report also suggested that Z.R. was limited in areas other than interacting and relating with others. Although she opined that Z.R. was markedly impaired in three domain activities in interacting and relating with others, she noted that he had a marked impairment in six domain activities in attending and completing tasks (Tr. 191-92).

Defendant contends that Z.R.'s fourth grade teachers' evaluations were not indicative of his long-term problems in the domain of attending and completing tasks, and that his third and fifth grade teachers' opinions showed that he did not have a marked problem in this domain (Doc. 20, pg. 15). The record does not support that argument. As noted above, both Z.R.'s third and fifth grade teachers opined that Z.R. struggled in this area and that his problems here were greater than his problems with interacting and relating with others (Tr. 109-12, 191-92).

As Plaintiff correctly noted, the majority of Z.R.'s teachers' evaluations were not part of the record at the time that the state agency physicians reviewed the file between March and August of

13

2006. For instance, the only teacher evaluation completed prior those dates was the first assessment completed by Z.R.'s third grade teacher, Ms. Gregory, in February of 2006 (Tr. 107-14). Thus, contrary to Defendant's argument that the latter evidence was not indicative of more severe limitations, the information provided by Z.R.'s teachers does suggest that Z.R. may have had a severe or extreme limitation in more than one domain. Therefore, it was important for the ALJ to reflect upon Z.R.'s entire record before rendering a determination of Z.R.'s limitations. For these reasons, remand is warranted because "failure to consider the record as a whole undermines the Secretary's conclusion." *Hurst v. Sec'y of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). Remand is also proper due to the ALJ's failure to "provide adequate articulation in support of his findings in light of the evidence in the record." *Matos v. Comm'r of Soc. Sec.*, 320 F. Supp.2d 613, 616 (N.D. Ohio 2004).

### C. Other Medical Opinion Evidence

Lastly, Defendant maintains that the ALJ's decision was supported by the medical opinions of child psychiatrists, Drs. Gregory Noveske and Vidhya Jaishankar,[5] to whom the ALJ gave probative weight (Tr. 19). Dr. Noveske only examined the claimant once in June of 2005 (Tr. 293-98). His notes show that Z.R. and Plaintiff missed two follow up appointments in July and September of 2005 (Tr. 293, 295), which led the doctor to indicate that they were noncompliant (Tr. 327-29). But, the opinions of a one-time examining source are "not entitled to any special deference." *See Wesley v. Comm'r of Soc. Sec.*, No. 99-1226, 2000 WL 191664, at *6 (6th Cir. 2000) (Table).

---

[5]Also referred to as Dr. Vidhyalahl (Tr. 416).

Dr. Jaishankar first saw Z.R. in March of 2007 (Tr. 412), and diagnosed him with Chronic Adjustment Disorder with depressed mood and disturbance in behavior (Tr. 416).  The doctor prescribed Prozac to treat Z.R.'s depression (Tr. 416-18).  Dr. Jaishankar continued to treat Z.R. through June of 2008 (Tr. 422-40, 498-99).  Although treatment notes from Dr. Jaishankar and Z.R.'s therapist depict decreases in Z.R.'s symptoms, in May of 2008, they recommended that Z.R. continue therapy and psychiatry, and for his file to remain open (Tr. 504).  The ALJ's decision failed to explain how he resolved the conflict between this evidence and the evaluations completed by Z.R.'s teachers.  Accordingly, the Court finds that this evidence did not provide sufficient support for the ALJ's conclusions.

**II. Whether the ALJ Properly Analyzed Z.R.'s Treating Physician's Opinions**

It is well-established that the opinion of a treating source must be given controlling weight if it is well-supported and not inconsistent with other evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  When an ALJ determines that the opinions of a treating source are not supported by medically acceptable clinical and laboratory diagnostic techniques or are inconsistent with other evidence in the record, the ALJ must apply specific factors to determine how much weight to afford the opinion.  *Id*.  These factors include the length of the treatment relationship, the frequency of examination, the supportability of the opinion, and the consistency of the opinion with the record as a whole.  *Id*.  The regulations also demand the ALJ to provide good reasons for the weight actually given to the opinion.  *Id*.

Dr. Harry Kiefer, Z.R.'s treating pediatrician, has treated Z.R. since February of 2003 (Tr. 19).  On March 12, 2008, Dr. Kiefer completed a functional assessment of Z.R.'s skills and limitations (Tr. 505-11).  In the report, Dr. Kiefer indicated that Z.R. had marked and extreme

15

limitations performing activities in the interacting and relating with others and attending and completing tasks domains.[6] More specifically, he indicated that Z.R.'s problems were marked in three domain activities in interacting and relating with others (Tr. 507), and in attending and completing tasks, he reported that Z.R. was markedly limited in two activities and extremely limited in three activities (Tr. 508). However, the ALJ gave little weight to Dr. Kiefer's opinions, stating that they were inconsistent with the medical evidence and lacked a rationale to support the conclusions (Tr. 19). The ALJ also noted that Dr. Kiefer had limited involvement treating Z.R.'s psychological problems (Tr. 19).

Plaintiff claims that the ALJ erred by failing to provide good reasons for discrediting Dr. Kiefer. Plaintiff further asserts that the ALJ had a duty pursuant to SSR 96-5p and 20 C.F.R. § 404.1512(e) to recontact Dr. Kiefer and seek additional information if the ALJ believed that the doctor's opinion was inadequate or incomplete. Conversely, Defendant maintains that the ALJ's stated reasons support his decision to give little weight to Dr. Kiefer's opinions, and that the doctor's opinions were not consistent with the evidence of record.

Although the ALJ listed reasons for discrediting Dr. Kiefer's opinions, determining whether the ALJ's stated reasons are "good" is a close call. While the ALJ and Defendant allege that Dr. Kiefer's opinions were inconsistent with the record, that issue is debatable. Undoubtedly, the ALJ agreed with Dr. Kiefer's assessment of Z.R. in the domain of interacting and relating with others because the ALJ himself found that Z.R. was severely impaired in this domain. Furthermore, a review of Z.R.'s teachers' evaluations show that three of Z.R.'s four teachers found that he had

---

[6]Dr. Kiefer did not comment on Z.R.'s limitation in the domains of acquiring and using information, caring for self, or moving about and manipulating objects (Tr. 506-10), but he opined that Z.R. did not have any serious impairment in the caring for health and well-being domain (Tr. 511).

an extreme problem in at least one domain activity in attending and completing tasks (Tr. 109, 201, 209); the remaining fourth teacher found that Z.R.'s impairment was marked in six activities in this domain (Tr. 192). Moreover, state agency physician, Dr. Matyi, also opined that Z.R. had a marked limitation in this domain (Tr. 341). Considering these factors, it is not clear that Dr. Kiefer's findings were inconsistent with the record. It may have been helpful for the ALJ to recontact Dr. Kiefer to determine the basis of his medical opinion. Nevertheless, because the Court has already determined that remand is warranted, the ALJ should re-evaluate Dr. Kiefer's findings based upon a review of the entire record, and if necessary contact Dr. Kiefer if there is any information that the ALJ needs from him in order to make an informed decision.

## V.  DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Z.R. was not disabled is not supported by substantial evidence. Accordingly, the Court recommends the decision of the Commissioner be REVERSED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this Report and Recommendation.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: November 15, 2010

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).